IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Phillip Stewart Yarbrough, | ) | Civil Action No. 8:15-cv-04930-RBH-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Nancy A. Berryhill, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

On October 26, 2009, Plaintiff filed an application for DIB and on July 22, 2009, he filed an application for SSI, alleging disability beginning January 2, 2005.  [R. 306–312; 313–315.]  The claims were denied initially on March 18, 2010 [R. 199–202] and upon reconsideration on October 13, 2010 [R. 207–211] by the Social Security Administration ("the Administration").  Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), and on February 10, 2012, ALJ Walter C. Herin, Jr., conducted a hearing on Plaintiff's claims.  [R. 41–98.]

On April 26, 2012, the ALJ issued his decision, finding Plaintiff not disabled.  [R. 178–189.]    Plaintiff requested Appeals Council review which was granted under the substantial evidence provision of the Administration's Regulations. [R. 196–197.]    The Appeals Council found that the ALJ failed to consider several factors in evaluating the intensity, persistence and limiting effects of Plaintiff's alleged symptoms, including: prior work record; daily activities; location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; and treatment other than medication.  [R. 196.] The Appeals Council also found that the decision did not provide an evaluation of the affect of Plaintiff's obesity on his ability to work in accordance with SSR 02-1p.  [*Id.*]  The Appeals Council vacated the ALJ's decision and remanded the matter to the ALJ requiring the ALJ to:

> \*    Update the evidence on the claimant's medical condition consistent with the guidelines in 20 CPR 404.1512, 404.1513, 404.1520b, 416.912, 416.913 and 416.920b.

> \*    Evaluate the claimant's obesity in accordance with Social Security Ruling 02-1p.

\* Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529 and 416.929) and Social Security Ruling 96-7p.

\* Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Rulings 85-16 and 96-8p).

\* If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-14 and 85-15). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p ).

[R. 196–197.]

On March 17, 2014, Plaintiff appeared before the ALJ for a supplemental hearing in accordance with the remand order.  [R 99–166.]   On May 19, 2014, the ALJ issued a subsequent decision finding Plaintiff not disabled. [R. 21–34.]  At Step 1[3], the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through June 30, 2008, and had not engaged in substantial gainful activity since January 2, 2005.  [R. 23, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had severe impairments of bipolar disorder and panic disorder with agoraphobia.  [R. 23, Finding 3.]  The ALJ also found Plaintiff had non-severe impairments of intermittent bronchitis, polyarthralgias,

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

recurrent prostatitis, dyslipidemia, history of hypothyroidism, recurrent headaches, and moderate obesity.  [R. 23–24.]  At Step 3, the ALJ determined Plaintiff's impairments or combination of impairments do not meet or medically equal the severity of one of the listed impairments.  [R. 24, Finding 4.]  The ALJ specifically considered Listings 12.04, and 12.06.  [*See id.* at 24–25.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: limited to performing simple, routine tasks in a lower stress environment involving non-confrontational supervisory contact and with no required interaction with the public or close, "team- type" interaction with co-workers. A lower stress environment is defined for these purposes as one in which the claimant is not required to meet a rigid, inflexible production schedule, is not required to make complex decisions at the work station, and is not required to adapt to frequent changes in policy or procedure at work. The claimant is further limited to no concentrated exposure to heat.

[R. 26, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work as a cashier, mover, stocker, delivery person, industrial cleaner, or pizza cook.  [R. 32, Finding 6.]  However, in light of Plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including representative occupations such as laundry folder and garment sorter.  [R. 33, Finding 10.]  Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from January 2, 2005, through the date of the decision, nor was he entitled to SSI based on his July 22, 2009 application.  [R.

4

34, Finding 11.]  Plaintiff filed a request for review of the ALJ's decision with the Appeals

Council which denied review.   [R. 1–6 .]  Plaintiff commenced an action for judicial review

in this Court on December 11, 2015.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and

contains multiple legal errors warranting the reversal and remand of the case.  [*See*, Doc.

16.]  Specifically, Plaintiff contends the ALJ

1.    failed to properly evaluate Plaintiff's credibility in accordance with the Appeals Council's remand order [*id*. at 19–24];

2.    failed to adequately explain his findings regarding Plaintiff's RFC as required by SSR 96-8p [*id*. at 25–29]; and,

3.    failed to properly assesses the medical opinion evidence of record in accordance with the treating physician rule [*id*. at 30–36].

The Commissioner contends the ALJ's decision should be affirmed because there

is substantial evidence of record that Plaintiff was not disabled within the meaning of the

Act.  [*See*, Doc. 17.]  Specifically, the Commissioner contends the ALJ

1.    properly evaluated Plaintiff's subjective complaints in evaluating his credibility [*id*. at 11–16];

2.    properly considered the record in assessing Plaintiff's limitations due to his bipolar disorder in determining his RFC [*id*. at 16–18]; and,

3.    properly weighed the opinion evidence of record from Plaintiff's treating physicians [*id*. at 18–19].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial

evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the

evidence must do more than merely create a suspicion of the existence of a fact and must

include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient

6

reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light*

*Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

8

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

*Id.* § 423(d)(1)(A).

## I.   The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.   20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.   *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).   The claimant must prove disability on or before the last day of her insured status to receive disability benefits.   *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).   If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.   *Grant*, 699 F.2d at 191.   If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.   20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.   *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined

11

impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

**E.    *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

12

perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but

the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).

15

However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the

16

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective

17

> evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*,

18

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Relevant Medical History**

Plaintiff alleges disability due to bipolar disorder, manic depressive disorder, violent mood swings, insomnia, depression, loss of muscle control, sensitivity to heat, psychotic breakdown, difficulty concentrating, fatigue and loss of appetite, drug interactions, dehydration and frequent urination from required medications.  [R. 339.] Plaintiff advised that the cyclical nature of his bipolar disorder allows him to have sporadic times of depression and manic behavior which interfere with his sleep, ability to concentrate, and physical endurance.  [R. 347.]  Plaintiff also advised that he has been able to work for a few months or less at a time [*see*, R. 361], but eventually goes through spells and has to quit.  [R. 356.]

On March 8, 2010, Plaintiff underwent a Mental RFC conducted by Leslie Burke, Ph.D. ("Dr. Burke") who found Plaintiff's impairments under Listing 12.04 limited him as follows:

–      Plaintiff is _not significantly limited _ in his ability to:

* remember locations and work-like procedures
* understand and remember very short and simple instructions
* carry out detailed instructions
* sustain an ordinary routine without special supervision

19

* work in coordination with or proximity to others without being distracted by them
* make simple work-related decisions
* interact appropriately with the general public
* ask simple questions or request assistance
* accept instructions and respond appropriately to criticism from supervisors
* get along with coworkers or peers without distracting them or exhibiting behavioral extremes
* maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness
* be aware of normal hazards and take appropriate precautions
* travel in unfamiliar places or use public transportation

– Plaintiff is _moderately limited_ in his ability to:

* understand and remember detailed instructions
* carry out detailed instructions
* maintain attention and concentration for extended periods
* perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances
* complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods
* respond appropriately to changes in the work setting
* set realistic goals or make plans independently of others

[R. 630–631.]

Plaintiff underwent a mental status examination on September 23, 2010 by Vernell K. Fogle, Ph.D. ("Dr. Fogle") at the request of the disability examiner. [R. 553.] Dr. Fogle noted that Plaintiff was transported to the assessment by his mother, had a hand tremor, but his psychomotor activity was within normal limits. [_Id_.] Dr. Fogle summarized Plaintiff past history of problems and indicated that Plaintiff believed he was showing symptoms of bipolar disorder in 1998, prior to being diagnosed, when he stole his grandfather's and mothers financial cards and drove to Ohio to visit a cousin and go on a shopping spree. [_Id_.]   When he returned home, he was placed in a psychiatric hospital where he was

20

diagnosed with mania.  [*Id*.] Plaintiff reported at total of three psychiatric hospitalizations, the most recent being in July 2000; and he reported avoiding two other psychiatric hospitalizations by seeing his psychiatrist on a daily basis.  [*Id*.]

Plaintiff reported experiencing severe depression, going for as long as three weeks with little or not sleep, pacing, racing thoughts, chronic insomnia, severe anxiety, and being especially uncomfortable in crowded situations and in meeting strangers.  [*Id*.]   Plaintiff also reported experiencing panic attacks characterized by shaking, muscle tension, increased heart rate, shortness of breath, racing thoughts, and an overwhelming fear and need to escape.  [R. 554.]  Plaintiff indicated that, during periods of mania, he has been unaware of his behaviors, and he suffered a psychotic break during his last episode of mania which was prompted by a prescription antidepressant.  [*Id*.] Plaintiff reported that he continues to have symptoms of psychosis such as "weird thoughts" that he was surrounded by demons or that people are in the room watching him but he can't see or hear them.  [*Id*.]   Plaintiff reported restless sleep, vivid dreams and confusion between dreams and reality.  [*Id*.]

At the time of the evaluation, Plaintiff denied current thoughts of harm, but admitted he had experienced suicidal ideations in the past.  [*Id*.] Treatment notes reviewed by Dr. Fogle indicated Plaintiff was being treated by Dr. Patrick Butterfield ("Dr. Butterfield") and that he was prescribed Depakote, Zyprexa, Ativan and Lithium; was diagnosed with nodules on this thyroid and was prescribed levothyroxine; and had hypercholesterolemia for which he was prescribed simvastatin.  [*Id*.]

Plaintiff reported taking "street drugs" in high school and huffing, but advised he had not used drugs since 2000, although he occasionally drank a beer.  [*Id*.] Plaintiff also

reported having several jobs "on and off since 1998", some of which he worked for two weeks. [*Id*.] In the past five years, Plaintiff indicated he has had three jobs and perhaps worked a total of four months, but, at the time of the evaluation, had no source of income and was financially supported by his mother. [*Id*.] With respect to his educational background, Plaintiff noted he was expelled from Irmo High School for disrespect toward a school administrator, attended Logan School, and was subsequently reinstated at Irmo. [R. 554–555.] Plaintiff reported being an "outsider," feeling uncomfortable in social interactions to the point he experienced suicidal thoughts, and subsequently left Irmo and completed his GED. [R. 555.] Plaintiff reported trying to attend Midlands Technical College, but states he was unable to complete his classes due to his social anxiety. [*Id*.]

Plaintiff reported that he lives with his mother, but keeps his own calendar, schedules appointments independently, is independent in self care, is able to prepare simple meals, vacuums, dusts, and washes dishes. [*Id*.] Plaintiff does not perform yard chores due to his low heat tolerance, he does not go places alone, and he feels very uncomfortable around people. [*Id*.] Plaintiff would like to go to church more often but is limited to attending 8 o'clock services where there are few people and little social interaction. [*Id*.] Plaintiff reported that he now can take his medications independently. [*Id*.] Plaintiff's typical day includes waking up around 6:30, turning on the TV and staying in bed for a while, taking the dogs out around 7:30, and going to bed around 9:30. [*Id*.]

Upon clinical exam, Dr. Fogle noted that Plaintiff had an above average fund of general knowledge; was able to name ordinary items and repeat simple sentences; carefully followed a three-step command; was able to read simple sentences, but needed a reminder to complete the third step of a three-step written commend; and was able to

22

write a simple sentence.  [R. 556.]  Dr. Fogle determined that Plaintiff's intelligence fell within the above average range based on vocabulary, fund of knowledge, verbal fluency, and abstract reasoning ability.  [*Id*.]  Dr. Fogle diagnosed Plaintiff with Bipolar Disorder, Type I, Panic Disorder with Agoraphobia, Social Isolation and gave him a GAF score of 54. [*Id*.]  Dr. Fogle opined that, because of his agoraphobia, Plaintiff is socially isolated and has moderate to severe limitations in his ability to interact appropriately with others on the job.  [R. 557.]  Dr. Fogle also opined that Plaintiff showed limitations in work-related functioning particularly in the area of adjusting to changes.  Dr. Fogle also found that Plaintiff would be able to use good reasoning to make simple work-related decisions; should be able to understand, remember, and carry out short, simple instructions; would be able to maintain an ordinary routine without special supervision if working alone; would be able to sustain a consistent pace without increasing periods of rest; however, he has a severe limitation in his ability to respond to changes in the work environment and increasing work pressures.  [*Id*.]

On September 25, 2010, Plaintiff underwent an evaluation by Dr. Blake Moore ("Dr. Moore") at the request of the disability examiner with respect to Plaintiff's allegations of bipolar disorder with violent mood swings, insomnia, psychotic features, nervous breakdown, fatigue, difficulty in concentration, loss of appetite, joint pain, chronic anxiety, and insomnia.  [R. 559.]  Dr. Moore's impressions at the time of the evaluation were that Plaintiff had bipolar disorder with psychotic features; had significant issues with self harm; and demonstrated an inability to maintain ongoing employment because of his mental health issues.  [R. 561.]

On August 25, 2010, Dr. Patrick T. Butterfield ("Dr. Butterfield"), Plaintiff's psychiatrist, wrote a letter advising that he took over Plaintiff's care in December 2008 for his bipolar disorder when he was 17 years old. [R. 584.]    Dr. Butterfield noted Plaintiff's psychiatric admissions in 1998 and 2000 and noted that Plaintiff had been treated by one of his former partners, Dr. John DeWitt ("Dr. Witt") from July 2000 until October 2008. [*Id*.] Prior to that, he was treated by Dr. Schnackenberg. [*Id*.] When Dr. Butterfield took over Plaintiff's care, he notes that Plaintiff had been unable to work for several years prior and, even on several medications, continued to have difficulties working and attending school. [*Id*.] Dr. Butterfield noted that Plaintiff repeatedly registers for courses and withdraws before they being or shortly after they begin; and that he was able to complete one course in the Spring of 2007 probably because he brother was in class with him. [*Id*.] Dr. Butterfield indicated Plaintiff was extremely anxious, is unable to enter a store alone, and, when in class, developed fears, paranoid thinking and experienced auditory hallucinations. [*Id*.] Dr. Butterfield advised Plaintiff was on five medications including Zyprexa, Depakote, Lithium, Ativan and Synthroid. [*Id*.]

On October 1, 2010, Plaintiff underwent a Psychiatric Review Technique ("PRT") evaluation by Leslie N. Rodrigues, Ph.D. ("Dr. Rodrigues") with respect to Listings 12.04 (*Affective Disorder*) and 12.06 (*Anxiety Disorder*) [R. 563] based on Plaintiff's bipolar disorder [R. 566] and panic disorder with agoraphobia [R. 568]. Dr. Rodrigues determined that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation of extended duration. [R. 573.] Dr. Rodrigues noted that, based on her review of notes from the September 23, 2010 Mental CE and notes from Dr.

24

Butterfield dated May 12, 2010 and July 7, 2010, although Plaintiff reports some significant symptoms to the CE, most of the symptoms were denied to the treating physician and some of the symptoms appear to have occurred in the past. [R. 575.] Dr. Rodriguez also discounted the CE's notes indicating Plaintiff would have problems adjusting to changes and work pressures as this finding was "based off of claimant's reports only and not objective evidence." [*Id*.] Dr. Rodriguez found that, overall, Plaintiff appeared able to perform at least simple tasks around familiar coworkers. [*Id*.]

Dr. Rodriguez also conducted a mental RFC on October 1, 2010 evaluating Plaintiff's mental limitations as follows:

– Plaintiff is *not significantly* limited in his ability to:

* remember locations and work-like procedures
* understand and remember very short and simple instructions
* carry out very short and simple instructions
* perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances

* sustain an ordinary routine without special supervision
* make simple work-related decisions
* ask simple questions or request assistance
* maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness
* be aware of normal hazards and take appropriate precautions
* travel in unfamiliar places or use public transportation*

– Plaintiff is *moderately limited* in his ability to:

* understand and remember detailed instructions
* carry out detailed instructions
* maintain attention and concentration for extended periods
* work in coordination with or proximity to others without being distracted by them
* complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods
* interact appropriately with the general public

25

    *      accept instructions and respond appropriately to criticism from supervisors

    *      get along with coworkers or peers without distracting them or exhibiting behavioral extremes

    *      respond appropriately to changes in the work setting

    *      set realistic goals or make plans independently of others

[R. 577–78.]  Dr. Rodriguez further opined that Plaintiff would function best with his own work area/station without close proximity to others; should avoid excessive workloads, quick decision making, rapid changes and multiple demands; and would benefit from regular rest breaks.  [R. 579.]  She also indicated that contact with the public should be limited, feedback should be supportive, and criticism should be tactful and non-confrontational; contact with coworkers should be casual; and Plaintiff would do best working with a small number of familiar coworkers.  [*Id*.]  Lastly, she found that Plaintiff could adapt to infrequent, well explained changes and could set ordinary daily work goals, but may need assistance with complex goals and planning. [*Id*.]

On April 28, 2011, Dr. Butterfield submitted the same letter he previously submitted on August 25, 2010 regarding his treatment history with Plaintiff.  [R. 583.]

**Credibility and Residual Functional Capacity**

Plaintiff contends the ALJ failed to adequately evaluate his credibility in that the ALJ failed to consider Plaintiff's prior work record; daily activities; the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; and treatment other than medication in evaluating the intensity, persistence and limiting effects of his alleged symptoms.  [Doc. 16 at 20.]  Additionally, Plaintiff argues the ALJ failed to explain his

findings regarding Plaintiff's RFC and failed to consider Plaintiff's inability to sustain work in the RFC consideration. [*Id*. at 25–29, 33–36.] The Court agrees.

### ALJ's RFC and Credibility Analyses

In determining Plaintiff's RFC, the ALJ followed a two-step process in which he first determined whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms. [R. 31.] After determining the presence of an impairment or impairments at Step 1, the ALJ, at Step 2, evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit the claimant's functioning. [*Id*.] Following this two-step process, the ALJ considered Plaintiff's underlying physical and mental impairments and the associated medical records to determine his RFC. [R. 31–32.]

The ALJ explained his consideration of the objective medical evidence and credibility as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> In terms of the claimant's alleged mental health problems, there is no evidence to substantiate that the claimant has been hospitalized for psychiatric purposes since his alleged onset date, January 2, 2005.
>
> ...
>
> As for the opinion evidence; there is no evidence that any treating or examining physician has ever placed limitations/restrictions on the claimant's ability to perform substantial gainful activity except as previously discussed.

Based on review of the total evidence, I find the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: limited to performing simple, routine tasks in a lower stress environment involving non-confrontational supervisory contact and with no required interaction with the public or close, "team- type" interaction with co-workers. A lower stress environment is defined for these purposes as one in which the claimant is not required to meet a rigid, inflexible production schedule, is not required to make complex decisions at the work station, and is not required to adapt to frequent changes in policy or procedure at work. He should not be required to have concentrated exposure to heat.

In reaching this decision, consideration was given to the opinions of State Agency medical consultants who reviewed the record when making the initial and reconsideration determinations. While their opinions are not entitled to controlling weight, they must be considered and weighed as those of highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Social Security Act. Social Security Ruling 96-6p. In this regard, I have given great weight to their opinions, which supports findings of significant limitations.

The objective findings and treatment notes of the claimant's treating and examining sources are consistent with the residual functional capacity limitations described above, as are the credible findings relating to any subjective symptoms. His impairments do not preclude all work.

[R. 31–32.]

### *Discussion*

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental

28

> activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule....

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.*

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. SSR 96–8p specifically states, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at 34,478. Thus, an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir.1985). An ALJ "may"

use evidence from other non-medical sources, such as testimony from spouses, parents, and friends, to show the severity of a claimant's impairment(s) and how it affects the ability to work.  20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).  In assessing the credibility of a claimant's statements, the ALJ must consider the entire case record, including "statements ... provided by ... other persons about the symptoms and how they affect the individual...." SSR 96–3p, 1996 WL 374186, at *1.  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

In the instant case, with respect to how many days per month Plaintiff was experiencing manic episodes with related crashes, the ALJ stated in the decision, "[Plaintiff] further testified that he has had no recent manic episodes and that his medications keep him stable." [R. 31.] The Court notes that at the supplemental hearing on March 17, 2014, when asked whether he had a full-blown manic attack recently, Plaintiff gave no verbal response. [R. 137.] Then, Plaintiff stated his medications had kept him pretty level, with the last time of a psychotic break happening in 2000. [*Id*.] Plaintiff described in detail what the manic episodes with related depression felt like. [R. 138–39.] In contrast, at the February 10, 2012, hearing, Plaintiff testified that he experiences extreme manic periods a couple days a month, after which he crashes and wants to be

30

alone or isolated from others.  [R. 65–66.]  Plaintiff also testified that the medications he takes in the morning make him groggy and sleepy and he typically ends up laying back down and sleeping [R. 68–69]; that his manic episodes are triggered by large crowds, being in unfamiliar places, dealing with angry or upset people, and for other unknown reasons [R. 70]; that his medications cause difficulty with concentrating and focusing on things [R. 71]; that he felt his panic attacks were becoming more frequent, that he has insomnia 3–4 days a week, and that he typically does not leave the house unless he's leaving with his mother or brother [R. 134].  Plaintiff's mother also testified that Plaintiff is becoming very dependent on someone else being with him because he questions his own judgment due to past experiences.  [R. 153.]

In the ALJ's decision, although it covers the time period from January 2, 2005, through May 19, 2014, the ALJ did not seem to make an actual finding of when Plaintiff had manic episodes, and how many per month; and the ALJ did not discuss Plaintiff's credibility with regard to his 2012 testimony that he had several manic episodes per month. Further, at the 2014 hearing, it appears that Plaintiff was not asked to describe when (or if) he may have stopped experiencing several manic episodes per month.  And, in 2014, Plaintiff was not asked to clarify if he was referring to no longer having psychotic breaks versus manic episodes (or both) with respect to his medications keeping him pretty level.

In addressing Plaintiff's testimony, the ALJ's decision appears to dismiss Plaintiff's allegations with respect to his limitations due to the fact that there is no evidence to substantiate any hospitalizations for psychiatric purposes since January 2005.  [R. 31.] The ALJ also appears to dismiss the testimony of Plaintiff's mother, which he found "generally credible", because "it became apparent she was enabling her son as she took

a job with BoA that allows her to work from home most of the time so she does not have to leave him alone." [R. 32.]

While these findings by the ALJ may be true, it is unclear how these findings contradict, or provide a basis for discrediting, Plaintiff's testimony that he experiences manic/depressive episodes a couple of times per month. The ALJ provided no other reasons for discrediting Plaintiff's credibility with respect to the number of his manic episodes per month, and did not address what weight, if any, was given to Plaintiff's statements regarding the limitations he experiences as a result of his condition. The fact that Plaintiff did not require hospitalization is not indicative of a lack of severity. *See Viverette v. Astrue*, No. 5:07-cv-395-FL, 2008 WL 5087419, at *2 (E.D.N.C. Nov. 24, 2008).

In proposing hypothetical questions to the vocational expert, the ALJ asked whether jobs in the national economy were available for a person who would be unable to be present for work at least three times per month due to psychological symptoms; the vocational expert responded that with such a limitation no work would be available. [R. 162–163.] Thus, the ALJ's explanation on credibility and the frequency of manic episodes was important for this Court to understand the basis for the ALJ's decision. And, because it is unclear from a review of the ALJ's decision how the ALJ weighed or considered Plaintiff's testimony regarding his experiencing manic episodes a couple of days per month, substantial evidence does not support the ALJ's decision and remand for a sufficient explanation is required. Upon remand, the ALJ should fully articulate the evidence he considered and relied on in making his credibility determination.

Therefore, the ALJ's decision does not comport with SSR 96–7p's requiring that it provide "specific reasons for the finding on credibility, supported by the evidence in the case record" and "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.  Although the ALJ is not required to discuss every piece of record evidence, he must articulate his findings in a manner that permits the court to determine whether substantial evidence supports his decision.

Additionally, upon review of the Plaintiff's medical history, the Court notes that, in addition to Plaintiff's testimony, the record is replete with evidence that Plaintiff suffers from moderate limitations in his ability to complete a normal work-day or work week without interruptions from psychologically based symptoms, and in his ability to perform activities within a schedule. [*See* R. 631(March 8, 2010 Mental RFC by Dr. Leslie Burke); R. 578 (October 1, 2010 Psychiatric Review Technique by Dr. Leslie Rodrigues); *see also* R. 561 (September 25, 2010 Evaluation by Dr. Blake Moore finding Plaintiff unable to maintain ongoing employment due to his mental health issues).]

There is also evidence of Plaintiff's past difficulties in maintaining work due to his psychiatric issues. [*See* R. 125–133, 554.]  Plaintiff's work activity report dated November 3, 2009, also contains a notation by the SSA reviewer that, even though Plaintiff has earning since January 2005, his earnings have been under SGA as he has only been able to work for a few months or less each time allegedly due to his medical condition.  [R. 356.]  The ALJ adopted this finding as well. [R. 23.]   The ALJ also determined that Plaintiff suffered from moderate difficulties with regard to concentration, persistence and pace.  [R. 25.]

Upon consideration of the ALJ's RFC findings, the Court is unable to determine whether the ALJ considered Plaintiff's moderate limitations his ability to complete a normal work-day or work week without interruptions from psychologically based symptoms in determining his RFC.   The RFC limitation to simple, routine tasks in a lower stress environment with non-confrontational supervisory contact and no interaction with the public or close team interaction with co-workers does not account for ability to stay on task for a full work day.   While the ALJ noted that he gave "much less weight" to Dr. Moore's "'gratuitous comment' about [Plaintiff's] 'demonstrated inability to maintain ongoing employment because of his mental health reasons'" as this was not Dr. Moore's field of expertise, the ALJ indicated that he gave much greater weight to the psychiatric consultative examinations on this issue, [R. 28–29], without explaining his consideration of the opinions on consultative exam which confirm and/or are consistent with Dr. Moore's finding and with Plaintiff's claims.

In *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015),[8] the Fourth Circuit ruled that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id*. at 638 (internal quotation marks omitted).   It reasoned that "the ability to perform simple tasks differs from the ability to *stay on task*," explaining that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*.(emphasis added).  Thus, the Fourth Circuit stressed that the ALJ should have explained

---

[8]The *Mascio* decision is dated after the ALJ's decision.

34

if a moderate limitation in concentration, persistence, or pace translates into a limitation in the RFC.

Here, the Court finds that the ALJ did not sufficiently explain how he factored into the RFC, or whether he decided it was not necessary to factor in, Plaintiff's moderate difficulties with regard to concentration, persistence and pace.  Upon remand, the ALJ should fully explain the evidence he considered in discounting evidence of record finding Plaintiff subject to moderate limitations in his ability to complete a normal work-day or work week without interruptions from psychologically based symptoms.

**Remaining Allegations of Error**

Because the Court found the ALJ's failure to sufficiently explain his consideration of Plaintiff's credibility and sufficiently explain the RFC determination are sufficient reasons for remand, the Court declines to address Plaintiff's remaining allegations of error.  On remand, however, the ALJ should take Plaintiff's other allegations of error into consideration.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case is REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 30, 2017
Greenville, South Carolina

35